The Full Commission has reviewed this matter based on the record of the proceedings before former Deputy Commissioner Lawrence B. Shuping, Jr. and the briefs and oral arguments on appeal. The appealing party has not shown good ground to reconsider the evidence, receive further evidence or to amend the holding of the prior Opinion and Award. The Full Commission, pursuant to its authority under G.S. § 97-85, has modified Findings of Fact 10-13 regarding the use and effectiveness of the medical treatment in question.
 ************ RULING ON MOTION
Before the Full Commission, defendant filed a Motion for New Evidence pursuant to Rule 60 of the North Carolina Rules of Civil Procedure. The Deposition of Dr. Tomaszek was taken in this matter on 19 February 1997. Thereafter, the record of evidence closed on 25 June 1997, and at such time, contained medical records from Dr. Tomaszek through 13 January 1997. Defendant has moved the Full Commission to reopen the record for the submission of medical records generated after 13 January 1997, but which existed at the time the record closed. Defendant has not alleged any wrongdoing on the part of plaintiff in regards to the records in question. Based on these circumstances, the Full Commission finds that defendant failed to use due diligence in procuring these records prior to the close of the evidence and have failed to show good ground in support of their Motion. Defendant's Motion is therefore, DENIED.
 *********** STIPULATIONS
The Full Commission finds as fact and concludes as matters of law the issues stipulated to by the parties in the a Pre-Trial Agreement, which was entered into prior to the hearing on 31 October 1996.
 ************
The Full Commission adopts the findings of fact found by the Deputy Commissioner and finds as follows:
 FINDINGS OF FACT
1. At the time of the hearing, plaintiff was an unemployed 33 year old female, who has been receiving weekly temporary total compensation benefits for her admittedly compensable back injury since 21 January 1991.
2. At the time plaintiff was injured she was employed as a floater, responsible for relieving other workers and was then assigned to the premises log yard. In the process of lifting a log on 11 January 1991 plaintiff sustained the admittedly compensable back injury giving rise hereto resulting. As the result of her injury by accident, plaintiff sustained a herniated disc at the L5-S1 level of her lumbosacral spine manifested by incapacitating back pain and left leg pain and numbness.
3. After initially being treated by Dr. Hargrove at the Family Medical Center, plaintiff was referred to Dr. Frederick, a Goldsboro orthopedic surgeon. Dr. Frederick attempted a conservative course of treatment consisting of bed rest, medication and physical therapy. When plaintiff's condition worsened she was subsequently referred to Dr. David Tomaszek, a Goldsboro neurosurgeon.
4. Dr. Tomaszek also initially attempted a conservative course of treatment, but because of plaintiff's lack of improvement he subsequently performed corrective surgery involving a laminectomy for the resulting disc herniation at L5-S1 of plaintiff's lumbosacral spine. This surgery did not relieve plaintiff's incapacitating back and leg pain and as a result defendant-employer referred her to Dr. Lee Whitehurst of the Triangle Spine and Back Care Center. Dr. Whitehurst recommended a spinal fusion with Steffee Plates. Dr. Tomaszek also recommended a spinal fusion, but one using wires instead of Steffee Plates and a bone stimulator to facilitate fusion. Plaintiff preferred the type of fusion recommended by Dr. Tomaszek, which defendant-employer authorized, and in November of 1992 Dr. Tomaszek performed a redo-laminectomy and fusion of the affected L5-S1 level with a bone stimulator.
5. Although the fusion did restore some feeling to her left leg and like her original laminectomy was technically successful; it did not alleviate the chronic intractable pain that plaintiff continued to experience. Plaintiff's pain required her to take extensive amounts of pain medication, the side effects of which prevented her from functioning normally.
6. Because she was not a candidate for further surgery and her condition had not improved with medication, Dr. Tomaszek recommended that plaintiff undergo the trial implantation of a dorsal column stimulator. This spinal stimulator was reasonably designed to provide her with necessary relief of her chronic intractable pain and was the less drastic of the other available modalities such as implantation of a morphine pump or brain stimulation.
7. Defendant-employer refused to authorize the recommended dorsal column stimulator and instead referred plaintiff to the Southwinds Rehabilitation program operated by Dr. Kilstrum in Durham. Although plaintiff attempted the same program for two or three weeks; her pain was too severe for her to handle it. She then sought an evaluation by another neurosurgeon, Dr. Keith A. Tucci of Greenville, who had nothing to offer her because she did not have a surgical lesion and he did not treat back pain or other sources of pain. Dr. Tucci then referred her back to Dr. Tomaszek who has been her primary treating physician and whose prior treatment, including two operations, had been authorized by defendant.
Other than undergoing medical training at a facility that does not believe in dorsal column stimulators, Dr. Tucci had no knowledge or experience whether dorsal column stimulators were an effective means of pain control and, as previously stated, did not treat back pain or sources of back pain if a surgical lesion was not involved. He did not offer an opinion that the recommended dorsal column stimulator was not reasonably designed to provide plaintiff with necessary relief of her chronic intractable pain.
8. Ultimately plaintiff returned to Dr. Tomaszek, who in November of 1993 implanted a trial dorsal column stimulator, which was successful in providing relief of her back and leg pain. Because of this success, Dr. Tomaszek subsequently implanted a permanent dorsal column stimulator consisting of an electronic lead placed over the back of the spinal cord and a battery placed under the skin.
9. Until a permanent one is developed, which is likely to occur in the next year, the associated battery will only last one to ten years, dependent upon its frequency of use and power setting. As of the date of the hearing the battery had been replaced twice and probably will need to be replaced again before a permanent battery becomes available.
The electronic lead portion of the stimulator is subject to migrating, which occurred in plaintiff's case in August of 1994, requiring it to be repositioned. In February 1995 this lead was replaced with a more effective one to increase the area of coverage. Later, in July 1996, scar tissue developed around the lead requiring the it to be revised, but it is will not likely to require another revision. Additionally, the system requires reprogramming every six months, which merely involves a doctor's office visit to test battery life and electrode function.
10. At the time the record of evidence closed on 25 June 1997, the evidence regarding the use and effectiveness of the dorsal column stimulator consisted of the following: (a) Dr. David Tomaszek, plaintiff's primary treating physician, recommended the use of the dorsal column stimulator in his as a treatment of her condition based on his professional judgment, training and experience; (b) the dorsal column stimulator was not presented as a perfect solution, and has required periodic adjustments; (c) when properly functioning, the dorsal column stimulator has provided plaintiff with significant relief from her chronic intractable pain, and; (d) this relief has not only enabled plaintiff to better function in her day to day living, but has significantly reduced the need for medication.
11. The fact that a particular course of recommended treatment is accompanied by complications or may eventually be altered or abandoned is not determinative in making a determination as to whether it should be provided at the time it is recommended by a treating physician. Although the Commission must weigh the opinions of medical experts when there is conflicting testimony, it must not substitute its medically untrained judgment for that of licensed physician when the medical evidence is uncontradicted, as it is in this case.
12. Because of the benefits provided to plaintiff, defendant is obligated to provide the dorsal column stimulator, including as part thereof, any necessary monitoring and repair of the stimulator to insure it continues functioning properly.
13. The medical and lay evidence which was in the record before the Full Commission that the dorsal column stimulator provided relief to plaintiff is undisputed. Therefore, this matter was defended without reasonable ground based on stubborn, unfounded litigiousness. The majority of the Full Commission notes that the Form 33 filed by plaintiff on 10 February 1998 is not part of the record of evidence before the Full Commission.
 *************
Based upon the foregoing and findings of fact the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. The dorsal column stimulator was not only reasonably designed to provide plaintiff with necessary relief of her chronic intractable pain, but has effectively done so; therefore, defendant-employer is obligated to provide the same device, including as part thereof, any necessary monitoring and repairs to insure that it will continue functioning properly. G.S. §97-25.
2. For the reasons stated in the above findings of fact, this matter was defended without reasonable ground based on stubborn, unfounded litigiousness, entitling plaintiff's counsel to a reasonable attorney fee pursuant to the provisions of G.S. §97-88.1. Considering that a hearing was required as well as two depositions, $1,500 is a reasonable attorney fee for plaintiff's counsel. G.S. § 97-88.1.
 **************
Based upon the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Defendant shall pay the cost of the disputed dorsal column stimulator, including as part thereof, not only any costs associated with monitoring and repair of the same device in order to insure it continues functioning properly, but reimbursing Medicaid and/or Champus for the costs either paid for the implantation and/or maintenance and repair of the dorsal column stimulator.
2. Defendant shall bear the cost, including as part thereof a reasonable attorney fee in the amount of $1,500 to plaintiff's counsel pursuant to the provisions of G.S. § 97-88.1.
 S/ ______________________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
S/ ______________________ THOMAS J. BOLCH COMMISSIONER
DISSENTING:
S/ __________________ RENÉE RIGGSBEE COMMISSIONER